UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

MICHAEL KELLEY DOYLE                                                     PLAINTIFF

VS.                              Civil No. 2:14-cv-02053

CAROLYN W. COLVIN                                                        DEFENDANT
Commissioner of Social Security Administration

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Michael Kelley Doyle, brings this action under 42 U.S.C. §405(g), seeking judicial

review of a decision of the Commissioner of the Social Security Administration ("Commissioner")

denying his claim for disability insurance benefits ("DIB") and supplemental security income

("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C.

§423(d)(1)(A), 1382c(3)(A).   In this judicial review, the court must determine whether there is

substantial evidence in the administrative record to support the Commissioner's decision. *See* 42

U.S.C. §405(g).

## I.       Procedural Background:

Plaintiff filed his application for DIB and SSI on November 17, 2011, due to shoulder, neck,

lower back problems, depression and anxiety. (T. 151) Plaintiff's application was denied initially

and on reconsideration. (T. 71).  Plaintiff then requested an administration hearing, which was held

in front of Administrative Law Judge ("ALJ"), Clifford Shilling, on November 1, 2012.

At the time of the hearing Plaintiff was 53 years of age and had completed the 10th grade in

high school.  His past relevant work ("PRW") experience included working in warehouses from

1997 to 1998, painting houses from 1999 to 2003, a grinding machine tender from 2003 to 2004

and most recently as a production worker building, crimping, cutting and inspecting hoses from

2006 to 2008. (T. 183-189) Plaintiff stopped working on January 16, 2008, because he was laid

1

off due to his missing too many days of work for depression, anxiety and going to the doctor. (T. 177) Plaintiff has not returned to work.

In a Decision issued on February 22, 2013, the ALJ found Plaintiff's right shoulder, neck and back pain, vision impairments, depression and anxiety were severe.  Considering the Plaintiff's age, education, work experience, and the residual functional capacity ("RFC"), based upon all of his impairments, the ALJ concluded the Plaintiff was not disabled.  The ALJ determined the Plaintiff could perform light work as defined in 20 C.F.R. §404.1567(b), except the Plaintiff could handle and finger bilaterally; and occasionally perform rotation, flexion and extension of the neck. He is limited to occupations that require only occasional visual acuity.  In addition, he could perform work where interpersonal contact was incidental to the work performed and complexity of tasks was learned and performed by rote using few variables and little judgment.  He required simple, direct and concrete supervision. (T. 15) With the assistance of a vocational expert, the ALJ concluded that Plaintiff would be capable of making a successful adjustment to work that exists in significant numbers in the national economy. (T. 19)

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on January 14, 2014. (T. 1-4) Plaintiff then filed this action on March 19, 2014. (Doc. 1) This matter is before the undersigned for Report and Recommendation.  Both parties have filed appeal briefs, and the case is ready for decision. (Doc. 10 and 11)

## II.   **Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *Ramirez v. Barnhart,* 292 F.3d. 576, 583 (8th Cir. 2002). "Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's decision." *Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000).

"Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Cox v. Astrue,* 495 F.3d 617, 617 (8th Cir. 2007). The AJL's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d, 964, 966 (8th Cir. 2003). The Court considers the evidence that "supports as well as detracts from the Commissioner's decision, and we will not reverse simply because some evidence may support the opposite conclusion." *Hamilton v. Astrue,* 518 F.3d 607, 610 (8th Cir. 2008). If after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young* at 1068.

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. §423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3), 1382(3)(c). A Plaintiff must show that his or her disability, not simply their impairments, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

If such an impairment exists, the ALJ must determine whether the claimant has demonstrated that he is unable to perform either his past relevant work, or any other work that exists in significant numbers in the national economy. (20 C.F.R. §416.945). The Commissioner's regulations require application of a five-step sequential evaluation process to each claim for disability benefits:  (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2)

3

whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker,* 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §404.150, 416.920 (2003).

### III.   Discussion:

The Court must determine whether substantial evidence, taking the record as a whole, supports the Commissioner's decision that Plaintiff has not been disabled from the alleged date of onset on January 1, 2008. Plaintiff raises four issues on appeal, which can be summarized as: (A) the ALJ did not fully and fairly develop the record; (B) the ALJ erred as to the severe impairments; (C) the ALJ erred in assessing the Plaintiff's credibility; and, (D) the ALJ's RFC determination is inconsistent with the record. (Doc. 10, pp. 13-20)

**Development of the Record:**

Plaintiff argues the ALJ failed to fully develop the record fully as to the severity of the Plaintiff's impairments. In reviewing the record, the Court finds there is substantial evidence to support the ALJ's finding that Plaintiff's hip pain and heart condition were not severe.

The ALJ has a duty to fully and fairly develop the record. *See Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995)(ALJ must fully and fairly develop the record so that a just determination of disability may be made). The ALJ owes a duty to a claimant to develop the record fully and fairly to ensure his decision is an informed decision based on sufficient facts. *See Stormo v. Barnhart*,

377 F.3d 801, 806 (8th Cir. 2004). In determining whether an ALJ has fully and fairly developed the record, the proper inquiry is whether the record contained sufficient evidence for the ALJ to make an informed decision. *See Haley v. Massanari*, 258 F.3d 742, 748 (8th Cir. 2001). The ALJ is only required to develop a reasonably complete record. *See Clark v. Shalala*, 28 F.3d 828, 830 (8th Cir. 1994).

The medical evidence is as follows.

On February 19, 2007, Plaintiff met with Dr. Jason Richey, a doctor with Cooper Clinic, P.A. ("Cooper Clinic"), and complained of lower back, neck, left shoulder, left arm and left hand pain. Dr. Richey assessed Plaintiff with having left hand, left shoulder and neck pain.  He prescribed Neurotin and Tramadol. (T. 281) Plaintiff followed up with Dr. Richey on March 7, 2007 regarding his neck and lower back pain.  Plaintiff informed Dr. Richey the Neurotin made him jittery, and Dr. Richey advised Plaintiff to discontinue the use of Neurotin. (T. 280)

The Plaintiff had MRIs performed on his back on March 20, 2007.  The results of the cervical spine MRI showed posterior herniations at C4-5, C5-6, C6-7 and C7-T1.  The disc herniations were more prominent to the left of midline and there was spinal stenosis at C4-5, C5-6 and C6-7. Bilateral foraminal stenosis at C3-4 and left foraminal stenosis at C4-5, C5-6 and C6-7.  The signal in the cord and craniocervical junction were normal.  The doctor's impression of the cervical MRI were disc herniations at C4-5, C5-6, C6-7, and C7-T1 with spinal stenosis at all these levels, bilateral foraminal stenosis at C4-5 and left foraminal stenosis at C5-6, C6-7, and C7-T1.  The results of lumbar spine MRI showed L3-4 and L4-5 to have mild disc bulges, which combined with facet hypertrophy to cause mild bilateral foraminal stenosis.  There was no evidence of disc herniation and there was normal signal in the thecal sac and nerve roots.  The doctor's impression of the MRIs were very mild disc bulges at C3-4 and L4-5, which combined with moderate

degenerative facet hypertrophy to cause mild bilateral foraminal stenosis.  At the bottom of the MRI results there is a handwritten note from the doctor stating "shows signs of disk bulge...nothing surgical [illegible] rec. pain specialist." (T. 282)

On April 17, 2007, Plaintiff met with Dr. Richey regarding arm numbness and tingling, neck and back pain.  Plaintiff attended physical therapy and missed work all week due to the pain in his arm.  Plaintiff had an appointment scheduled with Dr. John R. Swicegood, a doctor with the Advanced Intervention Pain & Diagnostics of Western Arkansas, on April 20, 2007.  Dr. Richey assessed Plaintiff with left arm neuropathy, neck pain and prescribed Lyrica. (T. 278) On June 20, 2007, Plaintiff complained Lyrica made him very anxious, nervous, and angry.  Dr. Richey noted the Plaintiff had a previous history of this prior to being on Lyrica.  Plaintiff claimed he would be unable to attend work due to the anxiety.  Dr. Richey assessed Plaintiff with anxiety and neck pain, gave him a note to be off work for two weeks, changed his dosage of Lyrica and prescribed Cymbalta. (T. 277)

Plaintiff returned to the doctor on July 5, 2007, for a follow-up examination.  He was still having some neck pain, anxiety and Cymbalta was not helping.  Since the anxiety was so great, he wished to be off work for the next three weeks.  Dr. Richey assessed the Plaintiff with neck pain and anxiety, increased the Cymbalta and gave him a note for work for the next three weeks. (T. 276) On July 27, 2007, Plaintiff complained of neck pain, he needed a refill of Tramadol and wanted to be off work until August 3, 2007.  Dr. Richey noted he had been off work for a month. Dr. Richey refilled the Tramadol, refilled Cymbalta and gave him a note to be off work until August 3, 2007. (T. 275)

On September 14, 2007, Plaintiff complained of lower back pain, mild drowsiness and confusion episodes.  He had received two shots for his back from Dr. Swicegood.  Dr. Richey

advised him the drowsiness was probably related to taking Cymbalta, assessed him with chronic lower back pain, increased Lyrica, prescribed Mobic, a nonsteroidal anti-inflammatory drug (NSAID), continued Tramadol, Cymbalta, and gave him a note for work and told him to continue his appointment with Dr. Swicegood. (T. 272, 274)

On October 26, 2007 Plaintiff needed a refill on his Tramadol.  Dr. Richey assessed him with chronic neck pain and refilled his prescription for Tramadol. (T. 270) On December 6, 2007 Plaintiff complained of lower back pain.  Dr. Richey assessed him with chronic lower back pain, advised him to keep his appointment with Dr. Joseph Miller, a doctor with the Advanced Interventional Pain & Diagnostics of Western Arkansas, L.L.C., and to continue with medicines and use a heating pad. (T. 267)

The next time the Plaintiff saw Dr. Richey was on September 8, 2008, when the Plaintiff hurt his left arm while he lifted tree branches.  Dr. Richey assessed him with right shoulder pain and prescribed him Mobic, and Tramadol and placed his arm in a sling. (T. 266) According to the records, the Plaintiff's final appointment with Dr. Richey on September 23, 2008, was a follow-up to the September 8, 2008 appointment.  Plaintiff needed a refill of Mobic.  Dr. Richey assessed him with right shoulder pain, prescribed him Mobic and advised him to do physical therapy. (T. 273)

While Plaintiff sought treatment from Dr. Richey for the aforementioned ailments, he was also being treated by Dr. Swicegood and Dr. Miller from April 20, 2007 to October 15, 2007, for pain management.  At the first appointment, Dr. Swicegood diagnosed the Plaintiff with brachial neuritis or radiculitis, not otherwise specified ("NOS"), displacement of intervertebral disc cervical without myelopathy bilateral, depression and hypertension. (T. 251-254) Dr. Swicegood established a plan of care to add Klonopin, continued physical therapy efforts, and recommended

7

cervical epidural steroid injections ("ESI") and a lumbar facet nerve block, once his neck and arm improved. (T. 254) Over the course of treatment from April 20, 2007 to October 15, 2007, Plaintiff received three ESI, Cervical, Interlaminar, C7/T1 shots and two ESI, Thoracic, T1-2 shots. (T. 255-264) Plaintiff reported to Dr. Richey, he had done five shots in his neck and it made him feel eighty percent better. (T. 270)

The next time Plaintiff sought treatment was after filing his claim for DIB and SSI.  Plaintiff established care for pain with Dr. John Urban, a physician with River Valley Primary Care Services, on July 19, 2012.  Plaintiff complained of depression, hypertension, anxiety, loss of vision, sleeplessness and chronic pain located in neck, right arm, lower back, right hip, left arm and shoulder. (T. 285) He consumed a six pack of alcohol, drank coffee and smoked a pack of cigarettes daily.  Dr. Urban assessed the Plaintiff with depression, arthritis and insomnia.  Dr. Urban prescribed Amitriptyline for depression, Lisinopril-hydrochlorothiazide, and advised him to take Tylenol over the counter for pain.  Plaintiff indicated he was filing for disability. (T. 386)

Plaintiff had a follow-up appointment with Dr. Urban for the hypertension on August 2, 2012. Plaintiff indicated while he had been sleeping well, his depression and anxiety were still bad.  Dr. Urban assessed Plaintiff with benign essential hypertension, generalized anxiety disorder and insomnia.  He prescribed BuSpar and continued Elavil for insomnia and depression. (T. 383-384)

On September 4, 2012, Plaintiff reported one month with the flu, mild chest pains and an inability to keep any food down the past couple of days.  Dr. Urban assessed Plaintiff with depression, insomnia, chest pain or discomfort, generalized anxiety disorder, benign essential hypertension and arthritis.  Dr. Urban conducted an Electrocardiogram (ECG, EKG), and prescribed Phenergan and Nitroglycerine.  The EKG results showed a right bundle branch block

(RBBB) of the left posterior fascicular block.  Dr. Urban directed if he had chest pain, go to the nearest hospital. (T. 383)

Plaintiff followed up with Dr. Urban on September 11, 2012 regarding his chest pains.  Plaintiff indicated the Nitroglycerine had helped with the pain.  Dr. Urban wanted him to set up a cardio consult at the University of Arkansas for Medical Sciences, UAMS. (T. 381-382)

On September 20, 2012, Plaintiff had a cardiology consult at UAMS.  During the consult, Plaintiff complained of chest pains, depression and anxiety, however, denied any neck or back pain.  Plaintiff indicated he smoked a pack of cigarettes and drank more than four drinks daily. (T. 364-366, 374-376) Dr. Srinivas Bapoje, resident at the UAMS Cardio Clinic, assessed the Plaintiff with a history of tobacco abuse, anxiety with crescendo Canadian Cardiovascular Society functional classification of III, and unstable angina.  A chest X-ray revealed minimal degenerative changes of the spine, normal heart size and vasculature and no acute infiltrates were seen. (T. 372)

Plaintiff was admitted into the hospital for stabilization of heart rate and evaluation for an obstructed coronary artery disease (CAD). (T. 366, 376) A heart catheterization was performed on September 21, 2012.  The results of the catheterization revealed no more than a 50% mid left anterior descending (LAD) coronary artery stenosis.  Dr. David Rutlen, attending physician at UAMS, did not believe it was hemodynamically significant. (T. 367) Plaintiff was discharged without any daily restrictions and with the following prescriptions Cholecalciferol, Pantoprazole, Buspirone, Hydrochlorothiazide, Nitroglycerin, Amitriptyline, Zocor, Metaprolol Tartrate, Ascriptine Enteric. (T. 343-345)

On September 28, 2012, Plaintiff had a follow-up examination with Dr. Urban.  Plaintiff indicated he had quit smoking, was taking the new medications, and felt better.  While he reports

he was more anxious since he quit smoking, his depression was improved.  Dr. Urban assessed him with chest pain or discomfort. (T. 379-380)

In additional to the medical evidence, the ALJ considered statements from treating and examining physicians in assessing the Plaintiff's RFC. (T. 16) On December 29, 2011, a consultative examination was performed by Dr. Chester Carlson.  Plaintiff complained of neck and lower back pain that started 25 years ago, but had worsened over the last several years.  He reported shoulder, back and neck pain and was diagnosed with depression and anxiety in 2004.  He had not been able to afford medications.  Plaintiff smoked a pack of cigarettes per day.  Dr. Carlson's examination showed no decrease in range of motion in the cervical or lumbar spine, no muscle weakness or atrophy, but did find muscle spasms in the deltoid and lumbar spine. (T. 289-290) Dr. Carlson observed the Plaintiff walk with an antalgic gait, but completed both straight leg raises, walked heel to toe, and squatted and rose from a squatted position without limitation.  Further, he stood and walked without an assistive device. (T. 290) The Plaintiff had a normal grip.  An X-ray showed mild Dextroscoliosis apex at L3.  Dr. Carlson diagnosed Plaintiff with chronic lower back pain secondary to degenerative disc disease (DDD), osteoarthritis and sciatica, anxiety and depression, by history. (T. 291) Based upon the evaluation, Dr. Carlson opined the Plaintiff had mild to moderate limitations in his ability to stand for long periods, walk, bend, stoop and squat. (T. 291)

On January 4, 2012, Dr. Jerry Thomas, a state medical consultant, reviewed the medical evidence, as a whole, and determined Plaintiff had the ability to occasionally lift or carry up to 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk about 6 hours in an 8 hour work day, sit about 6 hours in an 8 hour workday and no limitations placed on pushing and/or pulling.

(T. 298-304) After reviewing the evidence in the file and the assessment performed on January 4, 2012, Dr. Dan Gardner, affirmed Dr. Thomas's findings. (T. 340)

On January 9, 2012, a mental diagnostic evaluation was performed on the Plaintiff by Dr. Terry Efird.  Plaintiff reported chronic pain, general unhappiness, decreased interest in activities, sleep problems, appetite decreased, energy level was zero, problems with concentration, and feelings of worthlessness. (T. 305)  He also reported anxiety attacks around people, accelerated heart rate, sweating, shaking, chest discomfort, feeling dizzy, fear of dying on occasion, numbness or tingling sensations, chills and hot flashes.  Plaintiff also reported household chores were difficult to perform due to the pain.  While the Plaintiff had experienced these symptoms prior to seeing Dr. Efird, he did not report any in or out-patient treatment. (T. 305)

Dr. Efird observed Plaintiff to be appropriately dressed and groomed.  He had a dysphoric mood and a somewhat restricted affect, but no remarkable indications of acute emotion distress. His speech was within reasonable limits regarding rate and rhythm.  His thoughts were primarily logical, relevant and goal-directed.  He denied suicidal or homicidal ideations as well as visual or auditory hallucinations.  Plaintiff was alert and oriented to person, place and time. (T. 306-307) Dr. Efird diagnosed Plaintiff with major depressive disorder, moderate panic disorder with agoraphobia, and alcohol abuse and antisocial traits, and assessed him with a Global Assessment of Functioning (GAF) score of 50-60. (T. 307)

With regard to the Plaintiff's daily activities, Plaintiff stated he had not had a driver's license since 1992 and had not driven in years.  He can shop independently and handle personal finances, if necessary.  As for his social interactions, Plaintiff visited his neighbor/friend about twice a week, but he had been fairly socially isolated for about four years, since he had not been working. (T. 308)

11

Dr. Efird observed Plaintiff communicated and interacted in a reasonably socially, intelligible and effective manner.  He had the capacity to perform basic cognitive tasks required for basic work activities, performed most of the basic cognitive tasks adequately, and was able to track and respond adequately during the evaluation.  Plaintiff generally completed most tasks during the evaluation within an adequate time frame and was capable of performing basic work like tasks within a reasonable time frame. (T. 308)

On January 17, 2012, Dr. Jay Rankin, a state medical consultant, after reviewing the medical evidence, found the Plaintiff mildly limited to activities of daily living, but moderately limited socially and in concentration, persistence and pace. (T.323) (T. 329)

Dr. Rankin further opined, Plaintiff was moderately limited in his ability to carry out detailed instructions, maintain attention and concentration for extended periods, sustain an ordinary routine without special supervision, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, accept instructions, respond appropriately to criticism from supervisors, respond appropriately to changes in the work setting, and to set realistic goals or make plans independently of others. (T. 329) Dr. Rankin opined the Plaintiff was able to perform work where interpersonal contact was incidental to work performed, complexity of the task is learned and performed by rote, with few variables, little judgment and his supervision would be simple, direct and concrete. (T. 329) After reviewing the evidence in the case file and Dr. Rankin's decision on January 17, 2012, Jerry Henderson, Ph.D., a state medical consultant, affirmed Dr. Rankin's findings. (T. 339)

In making his decision, the ALJ considered the Plaintiff's statements regarding his activities and limitations in the reports he completed for the agency, testimony at the hearing, treatment

12

records, consultative physical examination, a consultative mental examinations as well as the assessments by the state agency medical consultants.  In the Court's opinion, the ALJ had sufficient evidence to make an informed decision.  The argument by the Plaintiff that the ALJ should have sought further clarification regarding the severity of his impairments is not reflected in the evidence presented to the Court.  The ALJ must neutrally develop the facts. *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004). He does not, however, have to seek additional clarifying statements from a treating physician unless a crucial issue is undeveloped. *Id.* at 839.

There has been no demonstration that the ALJ contacting the Plaintiff's health care providers regarding the nature and severity of his impairments would aid in helping the ALJ make an informed decision.  The Plaintiff has not demonstrated unfairness or prejudice resulting from the ALJ's failure to contact the medical health care providers to further develop the record.  Such a showing is required in order for a case to be reversed and remanded. *See Onstad v. Shalala*, 99 F.2d 1232, 1234 (8th Cir. 1993)(absent unfairness or prejudice, we will not reverse or remand).

**Severity of Plaintiff's Impairments:**

The Plaintiff alleges the ALJ erred when he found the Plaintiff's hip pain and heart condition were non-severe impairments.  The Court has reviewed the record and finds there was substantial evidence to support the ALJ's findings of non-severe with regard to the hip pain and heart condition.

A "severe impairment is defined as one which 'significantly limits [the claimant's] physical or mental ability to do basic work activities.'" *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (quoting 20 C.F.R. § 404.1520(c)). The impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence

13

consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms (see [20 C.F.R.] § 404.1527). 20 C.F.R. § 404.1508.

Plaintiff alleged right hip pain in his pain questionnaire dated December 15, 2011, however throughout the record the Court was unable to locate any diagnostic testing or medical records to support a finding of severe. (T. 192) Alleged impairments may not be considered severe when they are stabilized by treatment and otherwise are generally unsupported by the medical record. *Johnston v. Apfel*, 210 F.3d 870, 875 (8th Cir. 2000). Plaintiff bears the burden to establish severe impairments at step-two of the sequential evaluation, and Plaintiff had not met his burden concerning his hip pain. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000).

Regarding Plaintiff's heart condition, the Court finds the ALJ correctly determined it was non-severe.  Plaintiff did not allege this condition in his initial filing of disability. (T. 177) According to the record, the first mention of the heart condition was with Dr. Efird, when Plaintiff reported experiencing accelerated heart rate and chest discomfort on January 9, 2012, however, no treatment was sought until September 4, 2012. (T. 379) While the medical evidence showed he was treated by Dr. Urban regarding chest pains and was admitted at UAMS for a heart catheterization, the results of the catheterization revealed no more than a 50% mid LAD coronary artery stenosis.  Dr. Rutlen did not believe it was hemodynamically significant and discharged Plaintiff without restrictions to daily activities. (T. 343-344) The record reflects that Plaintiff's chest pain responded to medication. At a follow-up examination with Dr. Urban on September 28, 2012, Plaintiff indicated he had quit smoking, was taking the new medications prescribed, felt better, had only occasional chest pain and discomfort with no palpitations, reported improvement in his dyspnea or shortness of breath and did not have a cough. (T. 379-380) If an impairment can

be controlled by treatment or medication, it cannot be considered disabling. *Patrick v. Barnhart*, 323 F.3d 592, 596 (8th Cir. 2003).

In addition to the medical evidence, the ALJ had to determine whether or not the heart condition met the durational requirement.  In order for an impairment to be considered severe, the impairment must be expected to result in death or to be expected to last for a continuous period of at least twelve months. 20 C.F.R. §404.1509.  Reviewing the record as a whole, the Court agrees the first medical evidence provided regarding the chest pain occurred on September 4, 2012, which does not meet the twelve month requirement nor was there evidence presented to show the heart condition would last for a continuous period of not less than twelve months. (T. 13) The medical evidence, taken as a whole, supports the ALJ's finding the Plaintiff's heart condition was non-severe.

## ALJ'S Assessment of Plaintiff's Credibility:

Among the ALJ's findings in his Decision, was a finding that the Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not credible. Plaintiff contends the ALJ did not substantiate reasons for discrediting his testimony. (Doc. 10, pp. 14-17)  Although the ALJ employed a bit of Social Security boilerplate in stating that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision,"  the ALJ did appropriately address Plaintiff's credibility by examining and addressing the relevant medical evidence, application documents, and testimony at the hearing in accordance with applicable regulations, rulings and Eighth Circuit case law. (T. 15)

It is the ALJ's duty to determine the Plaintiff's RFC. Before doing so, the ALJ must determine the applicant's credibility, and how the Plaintiff's subjective complaints play a role in assessing his RFC. *Pearsall* at 1217-18. The ALJ must give full "consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; (5) and functional restrictions. The adjudicator is not free to accept or reject the claimant's subjective complaints solely on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole." *Polaski v. Heckler*, 739 F.2d 1230, 1322 (8th Cir. 1984).

To conduct the proper *Polaski* analysis, "[m]erely quoting *Polaski* is not good enough, especially when an ALJ rejects a claimant's subjective complaints of pain." *Hall v. Chater*, 62 F.3d 220, 223 (8th Cir. 1995). Instead, "*Polaski* requires that an ALJ give full consideration to all of the evidence presented relating to subjective complaints." *Ramey v. Shalala*, 26 F.3d 58, 59 (8th Cir. 1994). To that end, "[w]hen making a determination based on these factors to reject an individual's complaints, the ALJ must make an express credibility finding and give his reasons for discrediting the testimony." *Shelton v. Chater*, 87 F.3d 992, 995 (8th Cir. 1996) (citing *Hall*, 62 F.3d at 223). Such a finding is required to demonstrate the ALJ considered and evaluated all of the relevant evidence. *See Marciniak v. Shalala*, 49 F.3d 1350, 1354 (8th Cir. 1995) (citing *Ricketts v. Secretary of Health and Human Servs.*, 902 F.2d 661, 664 (8th Cir. 1990)). However, if "the ALJ did not explicitly discuss each *Polaski* factor in a methodical fashion," but "acknowledged and considered those factors before discounting [the claimant's] subjective complaints of pain .... An

arguable deficiency in opinion-writing technique is not a sufficient reason for setting aside an administrative finding where ... the deficiency probably had no practical effect on the outcome of the case." *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996) (citing *Benskin v. Bowen*, 830 F.2d 878, 883 (8th Cir. 1987)).

In applying the factors discussed in *Polaski*, the ALJ found the Plaintiff's symptoms were not entirely credible. (T. 15) The ALJ considered the following inconsistencies.  Plaintiff gave limitations as to his daily activities and the pain it caused, yet he walked down his long driveway to the mailbox, and walked to improve his cardiac symptoms. (T. 15)  Plaintiff claimed he had anxiety attacks around people and had not had a driver's license since 1992, however he shopped independently, handled personal finances, if necessary, spoke on the phone with family two or three times a week, and visited neighbors. *See Haley* at 748 (holding that inconsistencies between subjective complaints of pain and daily living patterns diminish credibility).

The ALJ further considered the Plaintiff had not sought medical treatment from September 2008 to July 2012. *See Moad v. Massanari*, 260 F.3d 887, 892 (8th Cir. 2001) (in assessing credibility, the court noted that plaintiff had not sought treatment from any physician in the seven months prior to administrative hearing) (T. 18) Plaintiff claimed he had not taken medications in four years as he was unable to afford them, yet he continued to smoke a pack of cigarettes and consume a six pack of beer daily. *See Riggins v. Apfel*, 177 F.3d 689, 693 (8th Cir. 1999) (noting that despite the claimant's claim that he could not afford medication, there was no evidence that he chose to forgo smoking three packs of cigarettes a day to help finance pain medications). Plaintiff was prescribed medication for insomnia and reported he was sleeping better with the medications.  *See Patrick* at 596 (holding if an impairment can be controlled by treatment or medication, it cannot be considered disabling). (T. 16)

The ALJ also noted Plaintiff complained of a mental component, however, no medical evidence was provided to document counseling, therapy or medication management by a mental health professional.  Moreover, Plaintiff had not taken medication for depression in four years and in 2012, doctors prescribed medicines for insomnia and depression, yet he reported little improvement with his depression. (T. 17)  Finally, the ALJ considered the functional restrictions the Plaintiff testified to at the hearing as well as the findings of Dr. Carlson, who after examination, assigned the Plaintiff with mild to moderate limitations in the ability to stand for long periods, walk, bend stoop and squat. (T. 15-18)

Because the ALJ's credibility determination was supported by good reasons and substantial evidence, we conclude that it is entitled to deference. *See Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006).

### ALJ'S RFC Determination:

Plaintiff next argues the ALJ failed to incorporate both the mental and physical findings of the treating physician and consulting psychologist, as well as the Plaintiff's hip pain and heart condition in determining the Plaintiff's RFC. (Doc 10, pp. 18).  The ALJ found that Plaintiff could perform light work and frequently handle and finger bilaterally, occasionally perform rotation, flexion and extension of the neck.  Plaintiff was limited to occupations that require only occasional visual acuity.  He had the ability to perform work where interpersonal contact was incidental to the work performed and the complexity of task was learned and performed by rote using few variable and little judgment.  He required simple, direct and concrete supervision. (T. 15) The Court has reviewed the record and finds the ALJ's RFC assessment is supported by substantial evidence.

RFC is the most a person can do despite that person's limitations.  20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004).  "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations."  *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009)*; see also Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (ALJ is responsible for determining RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own description of his limitations).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).

The Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001) Therefore, a claimant's RFC assessment "must be based on medical evidence that addresses the claimant's ability to function in the workplace." "An administrative law judge may not draw upon his own inferences from medical reports." *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000). Instead, the ALJ should seek opinions from a claimant's treating physicians or from consultative examiners regarding the claimant's mental and physical RFC. *Id.*; *Strongson v. Barnhart,* 361 F. 3d 1066, 1070 (8th Cir. 2004.)

In assessing the Plaintiff's RFC, the ALJ considered the Plaintiff's testimony regarding his neck, shoulder, lower back, hip and leg pain.  Plaintiff indicated he had a hard time going up and down stairs and could not stand for very long. (T. 44-46).  Plaintiff stated that while he was working he received injections in his neck, which helped.  However, he could no longer afford the shots.  The pain also interfered with household chores and yard work. (T. 54) Even with all of his

pain, the Plaintiff still walked down his long driveway to try to improve his heart and hip issues. (T. 55-56) The ALJ also considered the daily activities the Plaintiff reported to Dr. Efird in making his RFC determination. (T. 17)

In addition to the medical evidence, the ALJ considered statements from treating and examining physicians in assessing the Plaintiff's RFC.  The ALJ considered medical evidence that preceded the onset date of January 1, 2008, and discussed the treatment Plaintiff received through Dr. Richey from February 2007 to September 2008. (T. 15-16) The ALJ included in his determination of the Plaintiff's RFC Dr. Richey's examinations, and the MRIs.  Moreover, the ALJ considered medical evidence from Plaintiff's other treating physicians, Dr. Swicegood and Dr. Miller.  Under their care, the Plaintiff received five ESI's, and he stated they made him feel "eighty percent better." (T. 270)

The ALJ also considered the treatment Plaintiff received at River Valley Primary Care Services in 2012.  Plaintiff complained of depression, anxiety, hypertension, chronic neck, right arm, lower back, right hip, left arm and shoulder pain.  Dr. Urban diagnosed him with depression, arthritis and insomnia. (T. 385-386) Dr. Urban prescribed Amitriptyline for depression, Lisinopril-hydrochlorothiazide, and advised him to take Tylenol over the counter for pain.

The ALJ took into consideration the opinion evidence from Dr. Carlson, Dr. Thomas and Dr. Gardner.  Dr. Carlson assigned the Plaintiff with mild to moderate limitations in the ability to stand for long period, walk, bend, stoop or squat.  With regard to Dr. Jerry Thomas, he determined the Plaintiff was able to perform a range of light exertional level work, while taking into account the Plaintiff's medical records and testimony.  Dr. Gardner affirmed Dr. Thomas' findings.

As to the mental aspect of the RFC, the ALJ took into consideration the fact the Plaintiff provided no medical evidence to document counseling, therapy, or medication management. (T.

17) Plaintiff was diagnosed with depression in 2004, yet he had not taken medication for four years.  Then the Plaintiff went another four years, 2008-2012, without taking medication for depression.  The ALJ took into consideration, Dr. Efird's mental diagnostic evaluation and his diagnosis of the Plaintiff with moderate major depressive disorder, panic disorder with agoraphobia, alcohol abuse, and antisocial traits. Finally, the ALJ considered Dr. Rankin's opinion, which Dr. Henderson affirmed, as to the Plaintiff's mild limitations in performance of activities of daily life, but moderately limited socially and in concentration, persistence and pace. (T. 17-18)

Next, the Plaintiff argues the ALJ failed to incorporate the Plaintiff's hip pain and heart condition into the RFC.  In the case at bar, there is no medical evidence about how the hip pain affects his ability to function.  The Court found no specific diagnosis or limitations placed by any doctor concerning the hip pain.

Regarding the heart condition, while it is not specifically noted in his Decision, the ALJ stated that he considered the entire record, including the testimony of the Plaintiff, when assessing the RFC. (T. 18) The Plaintiff has provided no evidence that his heart condition would significantly limit his physical or mental ability to do basic work activities.  Further, no doctors have placed any daily restrictions on the Plaintiff when he was discharged from UAMS.  In fact, when the Plaintiff went to Dr. Urban for his follow-up he indicated he felt better, his chest pains were once in a while, had no palpitations, shortness of breath was improving and he no longer had a cough. (T. 379) Although the ALJ did not specifically mention the cardiac issue in his RFC assessment, the Plaintiff failed to provide some indication that the ALJ would have decided differently if that omission had not occurred. *Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012).

While it is the ALJ's duty to develop the record, the burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five. *Harris v. Barnhart,* 356 F.3d 926, 931 n. 2 (8th Cir. 2004). Based on the medical evidence, the state-agency evidence, and the testimony of the Plaintiff, the RFC determined by the ALJ is supported by substantial evidence.

## IV.   <u>CONCLUSION</u>

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's Decision denying the Plaintiff benefits. It is recommended that the ALJ's Decision be affirmed, and that Plaintiff's Complaint be dismissed with prejudice.

**The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

Dated this 4th day of March, 2015.

/s/ Mark E. Ford
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE